UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JEFFREY K. FREMEAU,

        **Plaintiff,**

v.                                    **Civil No. 2:19cv254**

**CREDIT ONE BANK, N.A.,** *et al.*,

        **Defendants.**

## OPINION AND ORDER

This matter is before the Court on a motion to dismiss and compel arbitration filed by Defendant Credit One Bank, N. A. ("Credit One"). ECF No. 20. For the reasons set forth below, the motion is **GRANTED**.

### I. FACTUAL AND PROCEDURAL HISTORY[1]

Plaintiff Jeffrey K. Fremeau ("Plaintiff" or "Fremeau") opened a credit card account with Credit One in 2012. Compl., ECF

---

[1] The following facts, which are not disputed at this time, are drawn from the Complaint and the evidence submitted by the parties in support of their respective positions on the motion to compel arbitration. ECF No. 1. Neither party challenges the opposing party's submission of such evidence, nor does either party suggest that is it improper for the Court to consider the evidentiary submissions. Accordingly, the Court considers such unopposed submissions. Although the instant motion is submitted as a motion to change venue pursuant to Fed. R. Civ. P 12(b)(3), the Court notes that the motion and exhibits outside the pleadings are properly considered under at least one of the following three theories: (1) Rule 12(b)(1), as a motion to compel arbitration is a "factual attack on the plaintiff's jurisdictional allegations applying the review standard applicable to summary judgment motions;" (2) Rule 12(d) after converting Defendant's motion into a motion for summary judgment; or (3) the Federal Arbitration Act, which involves application of a standard similar to summary judgment. Artis v. Lyon Shipyard, Inc., No. 2:17CV595, 2018 WL 2013073, at *1, n.2 (E.D. Va. Apr. 26, 2018).

No. 1, ¶ 7. Fremeau stopped using the credit card in April 2018. Id. ¶ 9. However, in May 2018, Fremeau alleges he was the victim of identity theft, that Credit One permitted an identity thief to change both the credit card account number and address, and permitted the identity thief to accrue fraudulent charges on the credit card. Id. ¶¶ 10, 12-15. Fremeau disputed the fraudulent charges, but ultimately was only credited for $371.96 of the total $657.54 in fraudulent charges. Id. ¶¶ 18-23.

In October 2018, Credit One reported the credit card account to Defendant Experian Information Services, Inc. ("Experian"), a credit reporting agency, as closed by the consumer and having a past due balance. Id. ¶ 26. Experian then published Fremeau's consumer report to a third-party with the purportedly inaccurate information regarding the credit card account, indicating that the account was past due even though the balance was due to fraudulent charges. Id. ¶¶ 28, 30.

On May 15, 2019, Plaintiff filed the instant action alleging eight causes of action. Count 1 alleges violations by Credit One of the Fair Credit Billing Act, 15 U.S.C. § 1666 *et. seq*, and Counts 2-4 allege violations by Credit One of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)(1). Id. ¶¶ 51-98. Counts 5-8 allege violations by Experian of the Fair Credit Reporting Act. Id. ¶¶ 99-118.

On July 12, 2019, Credit One filed the instant motion to dismiss and compel arbitration. ECF No. 20. The motion and accompanying memorandum, ECF No. 21, argue that in 2012, when Fremeau and Credit One entered into the credit card agreement (the "2012 Agreement"), the parties agreed "that any controversy or dispute between you and us . . . be submitted to mandatory, binding arbitration. . . . Claims subject to arbitration include, but are not limited to, disputes relating to . . . the application, enforceability or interpretation of this Agreement, including this arbitration provision[.]" Ex. E, 2012 Agreement, ECF No. 21-5 at 6. That is, the parties agreed to arbitrate any claims including the claims asserted in this case.

On August 2, 2019, Fremeau filed a response. ECF No. 28. Fremeau argues that in 2016 the arbitration provision was amended (the "2016 Amendment"), *inter alia*, to state that "[c]laims subject to arbitration include, but are not limited to, disputes relating to . . . the application, enforceability or interpretation of the Card Agreement (except for this Arbitration Agreement)." Ex. G, 2016 Amendment, ECF No. 21-7 at 2. Therefore, Fremeau argues, issues of arbitrability are not delegated to the arbitrator. Further, Fremeau argues that his claims are not subject to arbitration because in December 2018, Credit One again amended the agreement to permit cardholders to opt out of arbitration beginning in January 2019. Ex. 2, 2019 Revision, ECF No. 28-2 at 2. On

April 18, 2019, Credit One provided this 2019 Revised Agreement (the "2019 Agreement") to Fremeau. Compl. ¶ 47. On April 30, 2019, Fremeau claims he did reject the arbitration provision by sending a letter to Credit One indicating his intention to opt out of arbitration. Id. ¶ 48. In addition, Fremeau has filed a motion seeking additional time and permission to file a supplemental response to the motion to compel arbitration following discovery. ECF No. 29. Fremeau argues that discovery is necessary to determine whether his credit card account was closed prior to or in January 2019, when the 2019 revisions permitting customers to opt out of arbitration took effect.

Credit One filed a reply on August 8, 2019. ECF No. 28. On August 16, 2019, Credit One also filed a response to the motion for an enlargement of time, and on August 22, 2019, Fremeau filed a reply to that motion. Having been fully briefed, the matters are ripe for review.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") requires federal courts to "rigorously enforce arbitration agreements according to their terms." Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 233 (2013) (internal quotation marks and citations omitted). Federal policy favors arbitration of disputes, and thus "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the

4

construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." O'Neil v. Hilton Head Hosp., 115 F.3d 272, 273-74 (4th Cir. 1997) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)). Accordingly, "[a]greements to arbitrate are construed according to the ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration." Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 710 (4th Cir. 2001) (citation omitted). Courts must compel arbitration if the moving party proves "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure ... to arbitrate the dispute." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002).

"The party seeking to compel arbitration bears the burden of establishing the existence of an arbitration provision that purports to cover the dispute." Scales v. SSC Winston-Salem Operating, Co., LLC, No. 1:17CV539, 2017 WL 4467278, at *2 (M.D.N.C. Oct. 5, 2017) (internal quotation marks and citation omitted). "If the party makes this evidentiary showing, the party opposing arbitration must come forward with sufficient facts to

place the entitlement to arbitration in dispute." Id. (citing Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 564 (4th Cir. 2015)).

Determining whether the parties' arbitration agreement is valid or whether the parties agreed to arbitrate a particular dispute is a question of state law governing contract formation. Adkins, 303 F.3d at 501. Here, the 2012 credit card agreement includes a choice of law provision stating that Nevada law governs the contract. Ex. E, ECF No. 21-5 at 4 ¶ 29. The subsequent amendments have not changed the choice of law provision. Therefore, the Court will apply Nevada law, which the parties do not dispute should apply.

### III. DISCUSSION

### A. Arbitrability

As a preliminary matter, Credit One seeks to submit the entire case, including the question of whether Plaintiff's claims are arbitrable, to arbitration. That is, Credit One challenges this Court's jurisdiction to decide the instant issue of whether Plaintiff opted out of arbitration. The Fourth Circuit's recent opinion in Novic v. Credit One Bank, Nat'l Ass'n, 757 F. App'x 263, 265-66 (4th Cir. 2019) sets forth the standard for courts to determine such an issue of arbitrability.[2]

---

[2] "Arbitrability disputes often necessitate a two-step inquiry. First, we determine who decides whether a particular dispute is arbitrable: the arbitrator or the court. Second, if we conclude that the court is the

As part of their agreement to arbitrate, parties may consent to arbitrate the "gateway" issue of arbitrability, essentially allowing the arbitrator to determine his or her own jurisdiction. Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 68-69 (2010); Carson v. Giant Food, Inc., 175 F.3d 325, 329 (4th Cir. 1999). However, when the parties disagree whether they have delegated this authority to an arbitrator, that question of arbitrability must be answered by the court. See AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986); see also Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union, 665 F.3d 96, 102 (4th Cir. 2012). The federal presumption generally favoring arbitration is not applicable to a court's decision about who the parties intended

---

proper forum in which to adjudicate arbitrability, we then decide whether the dispute is, in fact, arbitrable." Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union, 665 F.3d 96, 101 (4th Cir. 2012) (internal citations omitted). However, "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." Id. at 104-05. Here, the parties dispute whether Plaintiff opted out of the arbitration provision as per the 2019 Agreement and his opt out became a part of the parties' contract, or if Plaintiff was unable to opt out of the arbitration provision as per the 2019 Agreement and the opt out did not become a part of the parties' contract. Defendant contends that if Plaintiff did not opt out of the arbitration provision, then the contract between the parties was the 2012 Agreement including the 2016 Amendment. Plaintiff argues that the 2019 Agreement governs, including his opt out of the arbitration provision, but he makes no argument as to what contract governs should the Court disagree with his assertion that he was able to accept the 2019 Agreement and did so, except through his implied recognition in his reply brief that the 2012 Agreement would govern through a reference to its choice-of-law provision. Plaintiff's Response, ECF No. 28, at p. 6. As Plaintiff's claims would be arbitrable under the 2012 Agreement and the 2016 Amendment, the Court does not need to reach this second question. Additionally, because the parties have not challenged the formation of a contract based on the 2012 Agreement and the 2016 Amendment, it is not necessary to reach a decision conclusively as to whether this is an issue of arbitrability or of contract formation.

to decide issues of arbitrability. Peabody, 665 F.3d at 102; Carson, 175 F.3d at 329. "[T]he question of arbitrability . . . is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." AT&T Techs., 475 U.S. at 649.

In order to overcome this general rule (that the gateway issue of arbitrability is generally decided by the Court) and place such power in an arbitrator's hands, the parties must agree, in "clear and unmistakable" language, that an arbitrator will decide which disputes the parties have agreed to arbitrate. Carson, 175 F.3d at 329 (quoting AT&T Techs., 475 U.S. at 649). The Fourth Circuit has explained that this "clear and unmistakable" standard is "exacting," and that a general agreement to arbitrate disputes arising between the parties will not suffice to establish the parties' intent concerning questions of arbitrability. Peabody, 665 F.3d at 102. To meet the "clear and unmistakable" standard, an agreement must contain language specifically and plainly reflecting the parties' intent to delegate disputes regarding arbitrability to an arbitrator. Peabody, 665 F.3d at 103; Carson, 175 F.3d at 330-31.

In this case, the 2012 Agreement between Plaintiff and Credit One stated that the claims subject to arbitration included disputes about "the application, enforceability or interpretation of this

8

Agreement, including this arbitration provision[.]" Ex. E, 2012 Agreement, ECF No. 21-5 at 6. In Buckeye Check Cashing, the Supreme Court found that the following provision in an agreement was unmistakably clear on the gateway issue of arbitrability: "[a]ny claim, dispute, or controversy . . . arising from or relating to this Agreement . . . or the validity, enforceability, or *scope of this Arbitration Provision*, or the entire Agreement . . . shall be resolved . . . by binding arbitration." 546 U.S. at 442. Notably, in Novic, the Fourth Circuit found language almost identical to that in the 2012 Agreement here to be unmistakably clear. 757 F. App'x at 264 ("Claims subject to arbitration include, but are not limited to, disputes relating to . . . the application, enforceability or interpretation of this Agreement, *including this arbitration provision*."). In both Buckeye Check Cashing and Novic, the courts found that the reference to the interpretation of the arbitration provision indicated that the parties agreed to submit issues of arbitrability to the arbitrator.

However, in 2016, the instant arbitration provision was amended to state that "disputes relating to . . . the application, enforceability or interpretation of the Card Agreement *(except for this Arbitration Agreement)*." Ex. G, 2016 Amendment, ECF No. 21-7 at 2 (emphasis added). That is, in 2016, Credit One amended the agreement to expressly <u>exclude</u> issues of interpretation of the arbitration provision from arbitration. Therefore, while the

instant matter of arbitrability would have been an issue for the arbitrator to decide under the original 2012 Agreement, when the agreement was amended in 2016, the parties agreed to return jurisdiction over issues of arbitrability to this Court. Because the January 2019 revision made no further changes to the arbitration provision aside from providing card holders with the ability to opt out of arbitration entirely, the scope of this provision remained unchanged from the 2016 amendment. Therefore, as the language of the provision applicable at the time the dispute arose does not clearly and unmistakably delegate power to determine issues of arbitrability to the arbitrator, Credit One has failed to meet this burden.[3] Accordingly, the responsibility to decide gateway issues of arbitrability remains with the court.

## B. Consent to Arbitrate

Having concluded that the applicable credit card agreement does not delegate issues of arbitrability to the arbitrator, the Court turns to the issue of whether Plaintiff consented to

---

[3] The language of the provision applicable at the time the dispute arose is the correct contractual language to analyze based on the text of the statute: "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2 (emphasis added); see also Galloway v. Santander Consumer USA, Inc., 819 F.3d 79, 85-88 (4th Cir. 2016) (using the arbitration language from an amendment to the parties' original agreement because the plaintiff "making payment in the revised amount [the defendant] requested and then continuing to make those payments for several years without complaint can only be interpreted as an assent to the terms of the Amended Agreement as slightly modified by the company.").

arbitration, or opted out of arbitration as he contends. The parties do not dispute that the arbitration provision would include the claims alleged against Credit One, if Plaintiff did not opt out.[4] Rather, Fremeau argues that in December 2018, Credit One revised its cardholder agreement and permitted cardholders to opt out of arbitration beginning in January 2019. Plaintiff appears to suggest two ways Credit One added the opt-out provision to the credit card agreement: first, Credit One unilaterally changed the agreement to include the opt-out provision, and second, that the parties mutually agreed to the change when Credit One sent the revised agreement with the opt-out provision in April 2019. Fremeau contends he did, in fact, opt out of arbitration that same month (on April 30th) in writing and within the 45-day period required by the revised agreement.

### 1. Unilateral

The Court first addresses Fremeau's argument that Credit One unilaterally changed the credit card agreement to include the opt-out provision. Both the agreement and Nevada statutory law permits unilateral changes by Credit One to the terms of the agreement. The 2012 Agreement contains the following provision, which has not been affected by any subsequent revisions:

---

[4] That is, within the Fourth Circuit's four-part Adkins framework, the parties agree that Defendant has met its burden in seeking to compel arbitration. The burden is on Plaintiff to demonstrate why arbitration should not be compelled.

> CHANGES IN AGREEMENT TERMS: We can change any term of
> this Agreement, including the rate of the finance charge
> or the manner in which the finance charges are
> calculated, or add new terms to this Agreement, at any
> time upon such notice to you as is required by law.

ECF No. 21-5 at 3 ¶ 1. Nev. Rev. Stat. Ann. § 97A.140(4)

provides that:

> An issuer may unilaterally change any term or condition
> for the use of a credit card without prior written notice
> to the cardholder unless the change will adversely
> affect or increase the costs to the cardholder for the
> use of the credit card.

While it is clear that Credit One had the power to

unilaterally change the terms of the credit card agreement per the

contract and Nevada statute, Plaintiff's argument assumes that

Credit One actually exercised that power and changed the terms of

Fremeau's credit card agreement. Such an assumption is belied by

the record currently before the court.[5] Credit One submits a sworn

declaration from Jeffrey Meek, assistant vice president of

collections at Credit One, stating that, in December 2018, Credit

One updated its standard credit card terms and conditions to permit

account holders to opt out of the arbitration provision. Decl. of

Jeffrey Meek, ECF No. 21-3 ¶¶ 17-19. Credit One provided written

notice to account holders, who then had 45 days from the time they

received notice to reject arbitration. Id. This change took

effect in January 2019. Id. Meek states that "Credit One did not

---

[5] The Court addresses below Plaintiff's request for additional discovery
seeking to dispute Meek's Declaration.

issue the Revised Card Agreement to Fremeau because his account was closed," and "Credit One does not issue new cardholder agreements or amendments to cardholder agreements to customers with closed accounts." Id. That is, Credit One did not exercise its power to unilaterally change its credit card agreement with Fremeau even though Credit One did make such changes to its agreements with other cardholders. As discussed above, once the party seeking to compel arbitration establishes the existence of an arbitration provision that purports to cover the dispute, the opposing party (Plaintiff) must come forward with sufficient facts to place entitlement to arbitration in dispute, Chorley Enters., 807 F.3d 553 at 564, but Plaintiff has not presented any evidence that Credit One did intend to permit Fremeau to opt out of arbitration. For the reasons stated above, the Court finds that there is no genuine issue of material fact on the record before the court as to whether Credit One changed the terms of the credit card agreement. Therefore, the Court concludes that Credit One did not unilaterally change the terms of its credit card agreement with Fremeau to permit Fremeau to opt out of arbitration.

### 2. Mutual

Next, Plaintiff argues that the parties mutually agreed to revise the credit card agreement. The record before the Court reveals that, on April 18, 2019, Credit One provided Fremeau with the 2019 agreement revised to allow cardholders to opt out of

arbitration. Compl. ¶ 47. On April 30, 2019, Fremeau claims he accepted the revision and did reject arbitration by sending a letter to Credit One indicating his intention to opt out of arbitration. Id. ¶ 48. It is undisputed that Credit One provided the revised 2019 agreement and Fremeau purportedly rejected arbitration after his credit card account was closed and the agreement terminated.[6]

Nevada is a common law state. Peardon v. Peardon, 201 P.2d 309, 334 (Nev. 1948) ("Whilst our law and equity in this state, due to our youthfulness as a state, has not found so frequent and elaborate expression . . . , we entertain no doubt that the [ ] principles . . . of other common law states are the same as those of Nevada, or vice versa."). At common law, a contract may continue to remain in force after the termination date only if the parties renew the terms of the original contract. See East Bay Union of Machinists, Local 1304 v. Fibreboard Paper Prods. Corp., 285 F. Supp. 282, 284, 287-88 (N.D. Cal. 1968) (where a contract

---

[6] Although the parties dispute the exact date when Fremeau's credit card agreement with Credit One was terminated, the latest it appears Plaintiff's credit card account was terminated was January 17, 2019. ECF No. 21 at 11, n.3. Meek's declaration states that in December 2018 Credit One did not issue the revised agreement to Fremeau, which revised agreement permitted opting out of arbitration, because Fremeau's account was closed. Decl. of Jeffrey Meek, ECF No. 21-3 ¶¶ 17-18. This suggests that Fremeau's credit card account was closed earlier than January 2019. Correspondence sent by Plaintiff to Credit One also suggests that the account was closed before January 17, 2019. In a letter dated January 10, 2019, Fremeau requested his cardholder agreement, stating "I previously had a credit card account with you." ECF No. 21-9 at 2; see also Credit Card Account Statements, Ex. F, ECF No. 21-6 at 81 (stating "Your account is currently closed" and indicating Plaintiff's account was closed in June and July 2018).

had a termination date and also an automatic annual renewal clause beyond the end date but one party's suggestion of a modification to the contract did not qualify as a renewal of the contract), aff'd, 435 F.2d 556 (9th Cir. 1970). However, once one of the parties decides to modify the original contract, that contract is not "renewed" but is rather a new contract. Id. at 287; see also Int'l Ass'n of Machinists & Aerospace Workers v. Int'l Longshoremen's and Warehousemen's Union, 781 F.2d 685, 691 (9th Cir. 1986); Seymour v. Coughlin Co., 609 F.2d 346, 350-51 (9th Cir. 1979).

Here, Credit One sent the revised agreement permitting opting out of arbitration in April 2019. This was nearly four months after January 17, 2019, the latest date the Plaintiff's credit card account was possibly closed. It is undisputed that the credit card agreement between the parties was terminated in April 2019.[7] At most, when Credit One provided the revised agreement to Plaintiff, that constituted an offer to form a new contract, per Ninth Circuit case law. When Plaintiff purportedly accepted this

---

[7] In the declaration submitted by Credit One, Meek states that Credit One mailed Fremeau the 2019 agreement in error after Plaintiff requested a copy of his agreement; however, Credit One did not intend for Plaintiff to be able to opt out of arbitration when the revised agreement was mailed. Decl. of Jeffrey Meek, ECF No. 21-3 ¶ 23. In response, Plaintiff argues that this constitutes a unilateral mistake. As discussed, because Credit One sent the revised agreement to Fremeau in April 2019 at a time when Plaintiff's credit card account was already terminated, the parties could no longer change the agreement, and it is not necessary for the Court to consider Plaintiff's unilateral mistake argument.

revision by sending a written letter rejecting arbitration later that same month, the parties then entered into a new contract. This new contract would govern future disputes, and the parties would not be compelled to arbitrate future disputes. However, the April 2019 correspondence is not a modification to the original credit card agreement between Credit One and Plaintiff, which governs the instant claims against Credit One. Therefore, the Court finds that the parties did not mutually agree to revise the credit card agreement to permit Plaintiff to opt out of arbitration, and any attempt by Plaintiff to opt out was ineffective at rejecting arbitration for the instant claims.[8]

Finally, it is of no moment that Plaintiff continued to receive billing statements after January 2019. The credit card agreement states that "[t]his Account may be terminated by you at any time by giving notice in writing to Credit One Bank. If your Account is closed by you or us, the Annual Membership Fee will

---

[8] The Court notes that Plaintiff's failure to opt out of arbitration until after his credit card account and agreement were terminated is also fatal to the argument that Credit One unilaterally changed the terms of the agreement to permit cardholders to opt out of arbitration. Even assuming Credit One made a blanket unilateral change that permitted cardholders to opt out of arbitration and Plaintiff's credit card account was open when the change was made (*i.e.* the revision permitting opting out of arbitration was applicable to the agreement between Credit One and Plaintiff), Plaintiff was only granted the option of opting out of arbitration. However, he did not exercise his right to opt out until April 2019 after his account was terminated. As discussed, at common law, this "modification" constitutes a new agreement, not a revision to the earlier agreement. Int'l Ass'n of Machinists & Aerospace, 781 F.2d at 691. Therefore, even if the opt-out was effective, the rejection of arbitration only applies to future disputes arising from the new contract, and the instant claims are still subject to arbitration.

continue to be charged until you pay your outstanding balance in full." ECF No. 21-5 at 3 ¶ 1. That is, the billing statements do not indicate whether Plaintiff's credit card account was still open. It appears from the agreement that a credit card holder would continue receiving billing statements even if the account was terminated so long as the account continued to have a balance. In this case, Plaintiff's account did have a balance, which he alleges was because of fraudulent charges, explaining why he continued to receive billing statements. These billing statements also stated, "Your account is currently closed," beginning with the statement for credit card account activity between June 11, 2018 and July 10, 2018. Credit Card Account Statements, Ex. F, ECF. No. 21-6 at 81. This further undercuts Plaintiff's argument that his credit card account remained open in 2019, such that Credit One could revise their agreement to permit opting out of arbitration.

## C. Motion for Discovery

Plaintiff has filed a motion seeking additional time and permission to file a supplemental response to the motion to compel arbitration following discovery. ECF No. 29. Plaintiff seeks discovery on various issues including the exact date Plaintiff's credit card account was terminated and whether Credit One issued the revised 2019 agreement permitting opting out of arbitration to other cardholders.

Discovery on these issues would not save Plaintiff's claims against Credit One. Credit One already has provided a sworn declaration from a Credit One employee stating that Credit One did not intend to make any changes to the terms of Fremeau's credit card agreement, regardless of what changes were made to the credit card agreements it had with other cardholders. Decl. of Jeffrey Meek, ECF No. 21-3 ¶¶ 17-19. Further depositions and interrogatories would likely only reveal additional evidence of this lack of intention to change the terms of Fremeau's credit card agreement.

At best, additional discovery would indicate Credit One made a universal blanket change to its terms and conditions and Plaintiff's account remained open until January 17, 2019, the latest date Plaintiff suggests his account may have still been open. If such facts were proven, then Plaintiff received the right to opt out of arbitration. However, it is not disputed that Fremeau did not in fact attempt to opt out of arbitration until April 2019 when his account was already closed, and the agreement terminated. As the Ninth Circuit has held, at common law, changes made to a contract after termination constitutes a new contract, not a change to the prior contract. Int'l Ass'n of Machinists & Aerospace Workers, 781 F.2d at 691. This new contract may govern changes that accrue going forward, but not the claims that Fremeau

brings in the instant case. Therefore, additional discovery cannot save Fremeau's claims from arbitration.

Because the Court finds that discovery would be futile, Plaintiff's motion for additional time to file a supplemental response is denied.

### D. Equitable Estoppel

Fremeau argues that Credit One should be precluded from compelling arbitration under the doctrine of equitable estoppel. He argues that when Credit One sent the revised 2019 agreement with a clause permitting opting out of arbitration, Credit One induced Fremeau to act to his detriment when Plaintiff did opt out. The Supreme Court of Nevada has established the following four-part test to determine whether equitable estoppel applies:

> (1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped.

In re Harrison Living Trust, 112 P.3d 1058, 1062 (Nev. 2005).

In this case, Plaintiff has failed to establish the second, third, and fourth elements. With respect to the second element, Plaintiff has presented no evidence that when Credit One sent Fremeau the revised agreement, Credit One intended for Fremeau to act upon it. In fact, as discussed above, Credit One has submitted evidence that it sent the revised agreement in error, and never

intended Fremeau to receive the revised agreement, let alone have the option to opt out of arbitration, or for Plaintiff to act upon the revised agreement when he did receive it. On the third element, Fremeau was not ignorant of the true state of facts. Fremeau acknowledges that he knew his account was closed when he received the revised agreement in April 2019. Having known his account was terminated, he is imputed with the knowledge that he could no longer opt out of arbitration because under common law, the parties may not make further changes to a contract that is completed or terminated. See, e.g., Omron Healthcare, Inc. v. Maclaren Exports Ltd., 28 F.3d 600, 602 (7th Cir. 1994) (parties are expected to have "knowledge of the common law history of judicial gap-filling."). Finally, on the fourth element, Plaintiff has not acted to his detriment. He has already commenced an arbitration action, Compl. ¶ 50, and has not waived any rights to pursue these claims in arbitration. Fremeau has not demonstrated any prejudice or "the inherent unfairness in terms of delay, expense, or damage to a party's legal position." Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd., 575 F.3d 476, 480 (5th Cir. 2009). Courts have also held that merely resolving disputes in the forum of arbitration instead of courts is not a detriment. Cf. Melahn v. Clarendon Grp., Ltd., 936 F.2d 578 (9th Cir. 1991) (distinguishing between creditors that were "innocent parties who were not signatories to the arbitration agreements" and would

suffer detriment in arbitration with "a party to a contract who seeks to escape from an arbitration agreement to which he subscribed" and would not suffer detriment because the party agreed to said arbitration).

For these reasons, the Court finds that Plaintiff is not entitled to estop Credit One from compelling arbitration on equitable grounds.

## IV. CONCLUSION

For the reasons stated above, the motion to compel arbitration is **GRANTED**. ECF No. 20. The Motion to Further Enlarge Time to Respond and Permit Supplemental Response is **DENIED**. ECF No. 26. Because the claims against Credit One were not properly before the Court, and to avoid case management issues, the Court exercises its discretion to **DISMISS** all claims against Defendant Credit One (Counts 1-4) without prejudice. See, e.g., Quality Plus Servs. v. AGY Aiken LLC, No. 3:16cv727, 2017 U.S. Dist. LEXIS 88467, *14 (E.D. Va. June 7, 2017). As per the Order signed on November 18, 2019, all claims against Defendant Experian have been dismissed with prejudice.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
January 10 , 2020